THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.* PARKHURST CANNING COMPANY, INC., Defendant and Appellant.

No. 8915. Argued November 14, 1944.—Decided February 15, 1945.

*Dubón & Ochoteco* for appellant. *Jesús A. González, Acting Attorney General, Fernando B. Fornaris, Assistant Attorney General,* and *Federico Tilén, Legal Adviser of the Department of the Interior,* for appellee.

Mr. JUSTICE TODD, JR., delivered the opinion of the court.

In this condemnation proceeding instituted by The People of Puerto Rico against Parkhurst Canning Co., Inc., in order to acquire a parcel of land measuring 2.236 acres (*cuerdas*), to be segregated from a larger tract owned by the defendant, situated between Bayamón and Vega Alta, and crossed by Highway No. 2, the plaintiff set up the amount of $5,118 as a reasonable compensation, that is, $1,118 as the intrinsic value of the land and $4,000 as damages caused to the defendant. The purpose of the expropriation, as alleged, was to accomplish the widening of said road. Subsequent to the rendition of the order approving the declaration of taking filed by the plaintiff under Act No. 2 of April 1, 1941, and of the order granting defendant's motion as to the delivery of the money deposited in court without prejudice to its right to claim additional compensation, the defendant answered the complaint, and after a trial, the lower court rendered judgment ordering the plaintiff to pay to the defendant the sum of $3,700 as additional compensation, together with interest thereon at 6 per cent, from the date of the taking by the plaintiff.

Feeling aggrieved, the defendant took the present appeal and in the errors assigned it confines itself to challenging the weighing of the evidence made by the trial court and consequently that the amount awarded is insufficient. In its brief the appellant prays that the judgment be modified by

increasing the award "to an amount which, according to the evidence introduced, should represent the true damages" caused to it.

Under these circumstances, we feel bound to make a summary of the evidence introduced by the parties. That of the plaintiff consisted of the testimony of the following witnesses:

CECILIO DELGADO, Civil Engineer and Assistant Chief, in charge of the survey and maintenance of the roads, of the Department of Interior, testified, in short, that it was absolutely necessary to run the road through defendant's land, because of the necessity not only from a civil standpoint but also from a military viewpoint and because of the cost, visibility, speed of traffic, topography, and the large number of houses in the neighborhood; that his survey was approved by the Federal engineers in Puerto Rico; that there was no other place for the construction of the road.

ANGEL M. QUINTERO, Assistant to the Commissioner of Agriculture and Commerce, testified that he had been the assessor of farm lands in the Federal Bank for 3½ years; that he assessed defendant's property at the rate of $500 per acre, "taking into consideration the damage caused to the property by dividing it into two parts," as well as the fertility of the land. He further testified that he had assessed the same at $500 "but speaking from an agricultural point of view it was not worth that price, but much less"; that they also took into consideration the fact that in all probability the Department of Health would not allow the defendant to deposit the wastes of fruits where they used to; that he calculated that 10 tons of waste transported at the rate of 40 cents a ton would be $4.00 daily and that working in the farm 100 days per year it would amount to $400 annually; that taking the term of 10 years as a reasonable period, the compensation would amount to $4,000; that he took the period of 10 years because "during that time the

business or the machinery could be changed; I considered that that was a reasonable time for them to go out of business if it did not prove profitable''; but that he did not take into account the rainy season when the land is flooded on both sides of the road.

HERACLIO RIVERA, Property Assessor of the Treasury Department, testified that the property had been assessed at $500 per acre thereby allowing ''a certain amount as compensation for the damages that might be caused'' in case that the wastes would have to be carried to another property; that a small parcel of land of a property is assessed at a much higher price than the whole property and that by virtue of the condemnation the property was subdivided; that the value of an acre of the land assessed is $200; that as to the $4,000 for damages he made the same calculation as the former witness; that when assessment is made for tax purposes the market value of the property is not taken into account.

WILLIAM Rossy, Chemical Engineer and Chief of the Section of Industrial Investigation of the Department of Agriculture and Commerce, testified that the elements taken into consideration then assessing the damages that might be caused to the business at $4,000 were the additional cost for the transportation of the wastes from one property to another within an area of 5 kilometers, which would take about 25 working days during the months of February, March, April, and May, that is, 100 days per year at the rate of 10 tons a day, making a total of $400 a year; that the period of 10 years was taken for the final computation because during that period said products could be used by way of modern methods or modern processes could be adopted to discontinue the transportation of the wastes; that he calculated the output of the factory as well as the normal capacity (50,000 cases per year equivalent to 2,000 tons of fruits); that the wastes were calculated at 60 per cent.

The documentary evidence of the plaintiff showed that the property of 12 acres belonging to the defendant was assessed for tax purposes at $1,500.

The oral evidence of the defendant consisted of the testimony of the following persons which we briefly summarize thus:

H. E. KNIGHT, Manager of the Corozal Canning Co., testified as expert on the production and processing of pineapple canning, his principal testimony being to the effect that in said processing 35 per cent of the product is used and 65 per cent is wasted; that the wastes have to be deposited at a distance from the road because they ferment, producing a bad smell which attracts flies; that he used 25 acres to spread 1,000 tons of wastes; that in his opinion 300 tons should not be deposited on half an acre; that the harvest of pineapple begins in the middle of February and the canning continues until August, that is, 7 months, after adopting a certain modern method to precipitate the ripening of the pineapple; that it is true that pineapple is scarce in the zones of Bayamón.

ROMÁN NARVÁEZ, owner of a dairy adjacent to the land of Parkhurst, testified that at first the flies and the smell from the wastes had interfered with his business but that it had ceased when the place of deposit had been changed precisely to where the road actually passes; that ever since the expropriation the wastes had been deposited between the two roads (the new and the old one) where they caused him no annoyance.

NORMAN PARKHURST, Secretary of the Parkhurst Canning Co., testified that said corporation (whose shareholders were his father, his brother, and himself) had been dissolved and that the property had passed to his brother and to him but that the factory continued in operation; that the annual

output of the factory averaged 50,000 cases which required 3,000 tons of fruits, giving in turn 1,000 tons of wastes—65 per cent of the total output—as the factory begins operating " . . . in February, March, April, May, June, July and generally finished by the month of August''; that the wastes are deposited at a distance of not less than 150 meters from the factory but that the place formerly used for that purpose could not be used now on account of the expropriation; that they intended to carry the wastes to another farm which is about 6 kilometers from the factory at a cost of $6,500 per crop (zafra), that is, $2.25 per ton; and as to the other farm on the other side of the new road, "the offer . . . is $2.25 for a period of 5 years, and for 10 years $2.75''; that the water from the road drains into the farm which becomes flooded during the rainy season; that he had not received any official communication from the Department of Health preventing him from depositing the wastes where he did since the condemnation.

W. E. PARKHURST testified that that year they had not worked for many days because they did not have a large quantity of fruit; that they had used about 600 tons of pineapple to fill 1,000 cases; that 65 per cent is wasted; he further explained the contracts for that year and the production during the preceding years.

In weighing this conflicting evidence and as a result of the ocular inspection carried out, the lower court stated in the opinion rendered in support of its judgment "that it constitutes a more reasonable and adequate compensation payable to the defendant for damages caused . . . to decide that the defendant must incur in an additional expense of 65 cents per ton of pineapple wastes which must be carried to his property of 4½ acres north of his factory, across the new road." Therefore, it rejected as excessive and unnecessary the expense of $3.25 per ton for the transportation of

wastes which the defendant alleged had to be made to its other property in Bayamón. The lower court calculated the damages for that item as follows:

"Based on this amount of 65¢ fixed as additional expense, we reach a total of $7,500 by multiplying it by 1,000 tons per crop and by 10 years which is the average term of defendant's business and which is, in the opinion of the court, a reasonable period. From this amount there must be deducted the $4,000 already paid to the defendant for this same item."

The court also awarded $200 for depreciation in the intrinsic value of two acres of land which during the rainy season become flooded as the water drains from a sewer constructed by the plaintiff. In brief, it increased the damages from $4,000 to $7,700, adjudging the plaintiff to pay to the defendant the difference, that is, $3,700.

We are of the opinion that the trial court did not err in deciding the conflict in the evidence above set forth. See *Housing Authority* v. *Hutton,* 60 P.R.R. 450. The cases cited by the appellant wherein this court has increased the compensation are clearly distinguishable, inasmuch as in those cases this court was convinced that thea mount awarded was entirely, unreasonable and inadequate. The appellant herein has not convinced us that the findings of fact based on the oral testimony presented to the court, are clearly erroneous and, hence, under Rule 52 of the Rules of Civil Procedure,[1] we shall not set then aside.

The judgment appealed from must be affirmed.

---

[1] Rule 52 of the Rules of Civil Procedure reads in part as follows: ". . . Findings of fact based on oral testimony shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."